<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | **On Appeal From:** |
|  | Case No.: 16-26161 (JKS) |
| AMERICA'S INSURANCE | Chapter 7 |
| CENTER, INC., | Hon. John K. Sherwood, U.S.B.J. |
|  |  |
| Debtor. |  |
|  |  |
| NAGEL RICE LLP, |  |
|  | Civil Action No. 19-13376 (BRM) |
| Appellant, | Hon. Brian R. Martinotti, U.S.D.J. |
| v. |  |
|  |  |
| MARC LEVY, *et al.* | **OPINION** |
|  |  |
| Appellees. |  |

**MARTINOTTI, DISTRICT JUDGE**

Appellant Nagel Rice LLP ("Nagel Rice") filed a notice of appeal (ECF No. 1) of the Bankruptcy Court's May 16, 2019 order (ECF No. 1-2) approving a settlement. The Chapter 7 Trustee (the "Trustee") and Appellees Marc Levy ("Levy"), MBL Benefits Consulting Corporation ("MBL"), Olender Feldman LLP ("Olender Feldman"), and Robert Szerlip ("Szerlip") ask the Court to affirm the Bankruptcy Court's order. Having reviewed the parties' submissions filed in connection with the appeal and having heard oral argument pursuant to Federal Rule of Bankruptcy Procedure 8019(b) on January 6, 2020, for the reasons set forth below and for good cause shown, the Bankruptcy Court's order is **AFFIRMED**.

**I.   BACKGROUND**

On August 23, 2016, America's Insurance Center, Inc. (the "Debtor") filed a voluntary

Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. (Bankr.[1] ECF No. 73-1 ¶ 4.) Nagel Rice, Levy, MBL, Olender Feldman, and Szerlip all filed claims in the bankruptcy proceeding.

Levy is a minority owner of the Debtor. (Bankr. ECF No. 26-1 ¶ 1.) Levy is also a minority owner of MBL. (Bankr. ECF No. 26-1 ¶ 1.) In May 2010, Levy and MBL brought a state court lawsuit suit against the Debtor as a result of a business dispute. (Bankr. ECF No. 26-1 ¶ 6.) Nagel Rice represented the Debtor in the state court litigation. (Bankr. ECF No. 26-1 ¶ 6.) Levy won a judgment against the Debtor for $247,451.11 (later increased to $439,913.09) and MBL won a judgment against the Debtor for $89,600.81. (Bankr. ECF No. 73-1 ¶ 26.) These judgments form at least part of the basis of Levy's, MBL's, and Nagel Rice's claims in the Debtor's bankruptcy proceeding.

Nagel Rice later obtained a judgment against the Debtor for the legal fees charged to represent the Debtor against Levy and MBL. (Bankr. ECF No. 83 ¶ 3.) Olender Feldmen defended the Debtor in these proceedings, and charged the Debtor for legal fees. (Bankr. ECF No. 83 ¶ 4.) Olender Feldman agreed in 2014 to receive a security interest in certain Debtor assets in exchange for Olender Feldman's agreement not to institute legal action to recover its fees from the Debtor. (ECF No. 73-1 ¶ 32.)

In June 2012, the Debtor entered a business arrangement with Szerlip. (Bankr. ECF No. 73-1 ¶ 28.) The Debtor granted Levy and MBL a security interest in revenue stemming from that arrangement as consideration for Levy and MBL refraining from seeking to enforce their judgments against the Debtor. (Bankr. ECF No. 73-1 ¶ 29.) In April 2015, the Debtor assigned all

---

[1] References to documents filed in the bankruptcy case below, No. 16-26161 (JKS), will be cited as "Bankr. ECF No."

its interest in the Szerlip arrangement to Levy in satisfaction of the judgment Levy held against the Debtor. (Bankr. ECF No. 26-1 ¶ 25.) Through February 2019, Levy received $411,459.89 from the Szerlip arrangement. (Bankr. ECF No. 73-1 ¶ 35.)

The Debtor entered Chapter 7 bankruptcy proceedings, listing $0 worth of assets and $280,260.35 in liabilities. (Bankr. ECF No. 1, Form 206Sum, lines 1c & 4.) Several parties filed proofs of claims. MBL filed two secured claims, each for $55,056.26. (Bankr. ECF No. 73-1 ¶ 6.) Olender Feldman filed two secured claims, each for $72,571.93. (Bankr. ECF No. 73-1 ¶ 7.) Nagel Rice filed a claim for $161,795.41. (Bankr. ECF No. 73-1 ¶ 8.)

After examining the Debtors books and records, the Trustee determined: (1) causes of action for fraudulent conveyance under 11 U.S.C. § 548 and N.J. Stat. Ann. § 25:2-1 *et seq.* against Levy and MBL may exist, and (2) the Oldender Feldman's claims and MBL's claims may be able to be subordinated under 11 U.S.C. § 510(c). (Bankr. ECF No. 73-1 ¶ 9.) Success on these claims would be necessary to pay Nagel Rice's claim. (Bankr. ECF No. 93, at 29:7-24.)

The Trustee also identified possible defenses to both the fraudulent conveyance claims and subordination claims. (Bankr. ECF No. 73-1 ¶¶ 41-42.) According to the Trustee, litigating these issues of fraudulent conveyance and subordination could cost over $150,000, with a risk the claims would ultimately not succeed. (Bankr. ECF No. 73-1 ¶ 46.) The Trustee testified, "any litigation of the Fraudulent Conveyance Claim and Subordination Claim would be highly complex, expensive (particularly given the absence of estate funds), and would create long delays in administration." (Bankr. ECF No. 73-1 ¶ 50.)

In recognition of the risk of further litigation, the Trustee brokered a settlement between the Trustee, Olender Feldman, Levy, and MBL. (Bankr. ECF No. 73-1 ¶ 43.) Under the settlement, Levy would pay $120,000 to the Trustee for the use of the bankruptcy estate. (Bankr. ECF No. 75,

Ex. A ¶ 1.) The settlement also governed creditors' claims: MBL would withdraw its claims and receive nothing from the estate, Olender Feldman would have an allowed secured claim of $22,500 and withdraw its remaining claims. (Bankr. ECF No. 75, Ex. A ¶ 3.) As part of the settlement, the Trustee agreed to limit its claim for costs of administration to $47,500,[2] "provided that this limitation shall be of no force and effect in the event of any appeal or motion for reconsideration of an order of the Bankruptcy Court approving or rejecting the" settlement. (Bankr. ECF No. 75, Ex. A ¶ 4.) The settlement would leave $50,000 remaining in the estate for distribution to the Debtor's remaining creditor, Nagel Rice. (Bankr. ECF No. 73-1 ¶ 52.) Finally, the settlement required the parties to the settlement—the Trustee, Olender Feldman, Levy, and MBL—to execute a release of third-party claims. (ECF No. 75, Ex. A ¶ 2.)

Over Nagel Rice's objection, the Bankruptcy Court approved the settlement. (Bankr. ECF No. 93, at 46:25-50:7; ECF No. 1-2.) Nagel Rice appealed. (ECF No. 1.)

## II.   JURISDICTION

This Court has jurisdiction to review the bankruptcy court's order. District courts possess mandatory jurisdiction over appeals "from final judgments, orders, and decrees" of bankruptcy courts. *See* 28 U.S.C. § 158(a)(1). A bankruptcy court's order approving a settlement is a "final" order as the term is used in the statute. *In re Nutraquest, Inc.*, 434 F.3d 639, 643 (3d Cir. 2006). Accordingly, this Court has jurisdiction over this appeal from the bankruptcy court's order approving a settlement.

---

[2] The full costs of administration would amount to approximately $130,000. (Bankr. ECF No. 93, at 4:24-5:8.)

**III.    DECISION**

    **A.    Fairness of the Settlement**

Nagel Rice argues the Bankruptcy Court erred by approving the settlement.  This Court disagrees because the Bankruptcy Court did not abuse its discretion by approving the settlement.

Bankruptcy courts have authority to "approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Before approving a settlement, a bankruptcy court must conduct "an examination of the 'fairness, reasonableness and adequacy' of the Settlement in light of the factors listed in *Martin*." *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (quoting *In re Glickman, Berkovitz, Levinson & Weiner, P.C.*, 204 B.R. 450, 455 (E.D. Pa. 1997)).  The *Martin* "factors are: (1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *RFE Indus.*, 283 F.3d at 165 (citing *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

Although a bankruptcy court "must of course rely on 'facts, not allegations,' when evaluating a proposed settlement," the bankruptcy court is "not required to have an evidentiary hearing on the merits of all claims before approving [a] [s]ettlement." *In re ID Liquidation One*, 555 F. App'x 202, 206-07 (3d Cir. 2014) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 437 (1968)).  In fact, the bankruptcy court may rely heavily on its mere exposure to the issues in the course of the bankruptcy.  *See id.* at 206.

On review of the bankruptcy court's decision to approve a settlement, this Court "consider[s] whether and how the Bankruptcy Court balanced [the] four [*Martin*] criteria." *In re WebSci Techs., Inc.*, 234 F. App'x 26, 29 (3d Cir. 2007).  The gravamen of this review is to determine "whether the settlement is 'fair and equitable.'" *In re ID Liquidation One, LLC*, 555 F.

App'x 202, 205 (3d Cir. 2014) (quoting *Nutraquest*, 434 F.3d at 644). "Although [this Court] review[s] *de novo* whether the Bankruptcy Court should have analyzed a settlement under the factors enunciated in [*Martin*], [this Court] review[s] whether the approval of that settlement was proper by applying the abuse of discretion standard." *In re Summit Metals, Inc.*, 477 F. App'x 18, 20 (3d Cir. 2012) (citing *Nutraquest*, 434 F.3d at 644; *In re RFE Indus. Inc.*, 283 F.3d 159, 165 (3d Cir. 2002)). The inadequacy of the bankruptcy court's pronouncement of its findings is insufficient grounds to overturn the approval of a settlement if the record contains sufficient facts to support the bankruptcy court's decision. *ID Liquidation One*, 555 F. App'x at 207.

This Court upholds the Bankruptcy Court's order because the Bankruptcy Court did not abuse its discretion by approving the settlement. The Bankruptcy Court properly chose to analyze the settlement under *Martin*. This Court cannot say the settlement was so unfair, unreasonable, inadequate, or inequitable as to constitute an abuse of the Bankruptcy Court's discretion.

### 1.    Probability of Success in Litigation

First, the Bankruptcy Court found Nagel Rice stood a low likelihood of success on the merits of its fraudulent conveyance claims because of the volume of litigation in which Nagel Rice would have to be successful in order for Nagel Rice to recover more than it received in the settlement. "There would be more litigation against [Olender Feldman] seeking to invalidate their prepetition lien. There would be litigation with MBL challenging their claim. And not only challenging their claims and their liens but also subordinating their claims to Nagel Rice." (Bankr. ECF No. 93, at 47:10-14.) When "embarking on a complex, expensive, and lengthy litigation," there is "no guarantee of ever being compensated for the substantial investment of time and money the case would require." *See In re Schering-Plough Corp.*, Civ. No. 08-397, 2013 WL 5505744, at *29 (D.N.J. Oct. 1, 2013). The low likelihood of success on the merits weighed in favor of

approving the settlement.

Nagel Rice argues the Bankruptcy Court's determination on this count was incorrect because the fraudulent conveyance claims had merit. Assuming without deciding Nagel Rice is correct, this Court cannot second-guess the Bankruptcy Court's determination that the length and uncertainty of the litigation limited the probability of success.

Nagel Rice also contends the Bankruptcy Court improperly undervalued the potential recovery on Nagel Rice's fraudulent conveyance claims when the Bankruptcy Court compared Nagel Rice's benefit under the settlement to its likely recovery from the fraudulent conveyance claims. This Court cannot reverse the Bankruptcy Court on this basis. When calculating Nagel Rice's likely recovery, the Bankruptcy Court estimated the amount of money Nagel Rice could potentially recover in litigation. (Bankr. ECF No. 93, at 18:19-24.) For its estimate, the Bankruptcy Court relied on the Trustee's testimony. (Bankr. ECF No. 73-3 ¶ 35.) While Nagel Rice points to evidence challenging the Trustee's testimony, this Court on appeal cannot reweigh the evidence before the Bankruptcy Court.

### 2.    Likely Difficulties in Collection

Second, Nagel Rice argues the Bankruptcy Court failed to make any finding concerning collectability. This Court disagrees.

The Bankruptcy Court inquired of Nagel Rice how it planned to recover more money through litigation than it would receive under the settlement. (Bankr. ECF No. 93, at 28:22-29:22.) In response, Nagel Rice outlined the multitude of proceedings in which it planned to engage. (Bankr. ECF No. 93, at 28:22-29:22.) The Bankruptcy Court stated on the record, "All right, I think you've got a lot of hurdles before you get there." (Bankr. ECF No. 93, at 29:23-24).

Even if the Bankruptcy Court's statement was not an explicit finding concerning

collectability, an explicit finding is not required where, as here, the record contains sufficient evidence to support a finding. *ID Liquidation One*, 555 F. App'x at 206-07. In light of Nagel Rice's concession concerning the significant litigation in which it would have to engage in order to recover more through litigation than it would receive under the settlement, the potential difficulties in collection also weigh in favor of accepting the settlement.

Nagel Rice also argues the Trustee failed to investigate the collectability of the fraudulent conveyance claims. Assuming without deciding Nagel Rice is correct, the Trustee's failure to investigate collectability does not cancel the other evidence in the record suggesting lengthy, uncertain litigation would be required in order for Nagel Rice to realize any recovery. (Bankr. ECF No. 93, at 47:10-14.)

Nagel Rice further argues the Bankruptcy Court improperly credited the Trustee's testimony concerning the difficulty of collection. This Court rejects this argument because the Bankruptcy Court in the first instance, not this Court on appeal, is responsible for the weighing of evidence.

### 3. Litigation Complexity, Expense, Inconvenience, and Delay

Third, the Bankruptcy Court found "years of costly and uncertain litigation" would result if the Bankruptcy Court disapproved the settlement so Nagel Rice could pursue the fraudulent conveyance claims. (Bankr. ECF No. 93, at 49:22-23.) Given the volume of litigation expected (Bankr. ECF No. 93, at 47:10-14), this finding had support in the record. This factor weighs in favor of approving the settlement.

### 4. Paramount Interest of the Creditors

Finally, the Bankruptcy Court appropriately considered the paramount interest of the creditors. Under the settlement, Nagel Rice would have received the $50,000 remaining in the

estate after the payment of other creditors, equivalent to approximately 31% of its approximately $161,795.41 claim.  (Bankr. ECF No. 93, at 47:19-24, 48:22-24.)  Nagel Rice could have received this money in the settlement in part because the Trustee agreed not to collect all of the $130,000 to which the Trustee would be entitled.  (Bankr. ECF No. 93, at 49:3-6.)  The record supports the Bankruptcy Court's finding that the settlement serves the interests of the creditors.

Nagel Rice claims the Bankruptcy Court's decision should have been more favorable to Nagel Rice than to creditors Levy and Olender Feldman.  This argument amounts to mere disagreement with the Bankruptcy Court's exercise of discretion.  Because the Bankruptcy Court appropriately considered the creditors' interests, this Court cannot second-guess the exact weight the Bankruptcy Court gave to each creditor's interest.

### 5. Overall Fairness of the Settlement in Light of the *Martin* Factors

All four *Martin* factors weigh in favor of acceptance of the settlement.  Under the circumstances, the settlement is reasonable, equitable, and fair.  Accordingly, this Court concludes the Bankruptcy Court did not abuse its discretion by approving the settlement.

### B. Trustee's Partial Waiver of Costs of Administration

Nagel Rice also challenges the provision of the settlement limiting the costs of estate administration to $47,500 (instead of the $130,000 to which the Trustee was entitled), but conditioning the limitation on the absence of any appeal or motion for reconsideration.  (Bankr. Bankr. ECF No. 75, Ex. A ¶ 4.)  This Court upholds the Bankruptcy Court's determination that the Trustee may permissibly condition its waiver of its entitlement to additional fees from the estate on the close of litigation.  (Bankr. ECF No. 93, at 23:2-19, 48:25-49:11.)

First, Nagel Rice argues the provision is not designed to protect the Trustee, but is instead a penalty provision or "poison pill," designed to coerce Nagel Rice into accepting the settlement.

Nagel Rice provides no evidence in the record to support this contention.

Second, Nagel Rice offers no authority to support the proposition that settlement language for the protection of a Trustee in the event of further litigation must be considered a penalty provision or "poison pill" because of its ancillary effect of increasing the Trustee's receipts and therefore decreasing the estate's funds remaining available to other creditors (like Nagel Rice). Nagel Rice's only citation is to a half-century-old state court decision discussing the difference in state contract law between penalty clauses and *liquidated damages* clauses—a distinction not at issue in this bankruptcy matter because the contested settlement language clearly does not constitute (and no party argues the language constitutes) liquidated damages. *See Westmount Country Club v. Kameny*, 197 A.2d 379, 382 (N.J. Super. Ct. App. Div. 1964).

Because Nagel Rice has not demonstrated the Trustee may not condition its waiver of entitlement to additional fees from the estate on the cessation of further litigation, the Bankruptcy Court did not err by rejecting Nagel Rice's "poison pill" argument.

        **C.**    **Release of Derivative Claims**

Finally, Nagel Rice argues the settlement impermissibly releases settling parties from claims Nagel Rice may have against them. This Court disagrees. The settlement language concerning release of claims does not purport to release any entity from a claim Nagel Rice may possess independently of its relationship to the Debtor. (Bankr. ECF No. 75, Ex. A ¶ 2.) The Bankruptcy Court confirmed that under the settlement, "Nagel Rice is not granting a release here of independent, non-derivative claims that it may have against any of the released parties here." (Bankr. ECF No. 93, at 49:16-18.) The Trustee, Levy, and MBL agree. (ECF No. 10, at 34-37; ECF No. 11, at 5-8.) Because the settlement language does not do what Nagel Rice fears it does, the settlement's release of claims language is not a basis on which this Court may reverse the

Bankruptcy Court's order approving the settlement.

IV. **CONCLUSION**

For the reasons set forth above, the Bankruptcy Court's order (ECF No. 1-2) of May 16, 2019 is **AFFIRMED**. An appropriate Order will follow.

Dated:  February 18, 2020                              */s/ Brian R. Martinotti*
                                                              **HON. BRIAN R. MARTINOTTI**
                                                              **UNITED STATES DISTRICT JUDGE**